UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SUSAN DAHLINGER,

       Plaintiff,

 -against-              1:19-CV-0020 (LEK/TWD)

FIRST AMERICAN SPECIALTY
INSURANCE COMPANY,

       Defendant.

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

This is an insurance coverage dispute between plaintiff Susan Dahlinger and defendant First American Specialty Insurance Company. Dkt. No. 1 ("Complaint"). Plaintiff alleges that she purchased an insurance policy from Defendant for her home in Highland, New York, and that, when her home was damaged by a broken plumbing line, Defendant breached the policy by refusing to cover the losses. Id. As recompense, Plaintiff asks for compensatory and consequential damages. Id. ¶ 35.

Defendant has filed a motion under Federal Rule of Civil Procedure 12(b)(6) asking the Court to dismiss Plaintiff's claim for consequential damages. Dkt. Nos. 8 ("Motion to Dismiss"); 8-4 ("Memorandum"). Plaintiff opposes this motion, Dkt. No 9 ("Opposition"), and Defendant has filed a reply, Dkt. No. 11 ("Reply"). For the following reasons, the Court grants the Motion to Dismiss.

### II. BACKGROUND

At the motion to dismiss stage, the Court draws all facts from the Complaint, and "assumes all factual allegations in the Complaint are true." Colangelo v. Champion Petfoods

USA, Inc., No. 18-CV-1228, 2020 WL 777462, at *1 (N.D.N.Y. Feb. 18, 2020) (Kahn, J.) (citing Bryant v. N.Y. State Educ. Dep't, 692 F.3d 202, 210 (2d Cir. 2012)).

**A. Factual Background**

Plaintiff lives at 548 N. Riverside Drive in Highland, New York. Compl. ¶ 1–2, 5, 8. Defendant is a California corporation with its principal place of business in Santa Ana, California. Id. ¶ 2.

Plaintiff purchased an insurance policy for the Riverside Drive property (the "Property") from Defendant, effective from March 6, 2016 to March 6, 2017 (the "Policy").[1] Id. ¶ 5. The Policy insured Plaintiff "against direct physical loss of or damage to the insured premises caused by a sudden and accidental break in a plumbing line," and covered real and personal property. Id. ¶ 6. The Policy also covered "loss of use" in the event of serious physical damage to the Property. Id. ¶ 14.

On or about January 6, 2017, a "sudden and accidental break in a plumbing line" damaged the Property. Id. ¶ 7. The break "caused water damage throughout the house," damaging both personal property and the home itself. Id. ¶ 8. Besides the property damage,

---

[1] Defendant submitted a purported copy of the Policy in support of its Motion to Dismiss and urged the Court to consider the Policy's terms in resolving the motion. Mem. at 3; see also Dkt. No. 8-3 ("Purported Policy"). Defendant argues that the Court can properly consider the Purported Policy because "Plaintiff cited to the Policy, [and] explicitly relied on it in drafting the Complaint." Id. While Defendant is correct on the law—when deciding a 12(b)(6) motion, a court can consider documents that are integral to or incorporated by reference in a complaint, see ICM Controls Corp. v. Honeywell Int'l, Inc., No. 12-CV-1766, 2019 WL 7631075, at *10 (N.D.N.Y. Dec. 3, 2019) (Kahn, J.)—it is wrong on the facts. Specifically, the Purported Policy states that it was effective from "03/06/2018" to "03/06/2019." Purported Policy at 3. The Policy at issue in this case, however, was effective from "3/6/16 to 3/6/17." Compl. ¶ 5. Therefore, Plaintiff neither "cited to" nor "explicitly relied on" the Purported Policy when drafting the Complaint, as Defendant claims. For this reason, the Court cannot consider the Purported Policy. In any event, the precise terms of Plaintiff's insurance policy are not necessary to resolving this motion.

"[i]mmediately following and in the aftermath [of the pipe break], Plaintiff [also] suffered a series of severe, incapacitating and life-threatening physical and emotional illnesses." Id. ¶ 9.

"As soon as reasonably possible" after the plumbing lines burst, Plaintiff submitted an insurance claim to Defendant for the damage to her house and personal property. Id. ¶ 10. Additionally, because the home was not "safe and livable after the water damage," Plaintiff also sought benefits "pursuant to the additional living expenses" provision in the Policy. Id. ¶ 11. In response to these claims, Defendant "acknowledged coverage for the loss," sent an insurance adjuster to inspect the damage to the Property, and "undertook to handle the claim through its duly authorized representatives." Id. ¶ 12.

While Defendant evaluated her claims, Plaintiff "complied with all [the necessary] conditions precedent," "cooperat[ed] with [Defendant's] investigation of the" claims, and "substantially performed" all of her obligations under the Policy. Id. ¶¶ 13, 15 27. Despite this, and in breach of "its contractual duty to adequately compensate Plaintiff under the terms of the Policy," id. ¶ 27, Defendant refused to pay Plaintiff for the damage to her home, id. ¶¶ 17, 19, 23–27, 29–32. In justifying its decision not to pay, Defendant "disregarded [Plaintiff's] information" in favor of the "incorrect and flawed opinions of its adjusters and advisers." Id. ¶ 23.

Besides its "wrongful[]" "failure to pay," id. ¶¶ 19, 24, Defendant also "did not adequately investigate the entire scope of damages" nor correctly calculate the value of the damage to the Property, id. ¶ 21. Additionally, "although it was aware of its liability to [Plaintiff] under the Policy," Defendant "did not attempt to settle [Plaintiff's] claim in a fair manner." Id. ¶ 28. This necessitated Plaintiff "retain[ing] a lawyer and first "threaten[ing]," then "institute[ing] legal action" against Defendant." Id. ¶¶ 29, 31.

Overall, Plaintiff's losses were "a direct and foreseeable consequence of [Defendant's] . . . wrongful conduct in that such wrongful conduct by the insurer could cause additional monetary loss was reasonably foreseeable and contemplated by the parties at the time of contracting." Id. ¶ 34. For this reason, Plaintiff "is entitled to . . . compensatory and consequential damages." Id. ¶ 35.

## III. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678 (citing Twombly, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Put another way, a claim is plausible if it is supported by 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct].'" Pare v. Valet Park of Am., Inc., No. 19-CV-206, 2020 WL 495038, at *4 (N.D.N.Y. Jan. 30, 2020) (Kahn, J.) (alterations in original) (quoting Twombly, 550 U.S. at 556). "In assessing whether this standard has been met, courts 'must accept all allegations in the complaint as true and draw all inferences in the light most favorable to the non-moving party[] . . . .'" Charles Ramsey Co., Inc. v. Fabtech-NY LLC, No. 18-CV-546, 2020 WL 352614, at *9 (N.D.N.Y. Jan. 21, 2020) (Kahn, J.) (alteration in original) (quoting In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007)).

**IV. DISCUSSION**

The Court considers in turn: (A) the choice of law governing this case; (B) the merits of the Motion to Dismiss; and (C) whether to grant Plaintiff leave to amend her Complaint.

**A. Choice of Law**

"A federal court sitting in diversity . . . must apply the substantive law of the state in which it is sitting, including the state's choice of law rules." <u>Young Men's Christian Ass'n of Plattsburgh v. Philadelphia Indem. Ins. Co.</u>, No. 18-CV-565, 2018 WL 6267923, at *3 (N.D.N.Y. Nov. 30, 2018) (Kahn, J.) (citing <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64 (1938)). Defendant argues that, under the New York choice of law rules applicable to this case, "[t]here can be no dispute that th[is] matter . . . is to be resolved under substantive New York Law." Mem. at 4. Plaintiff does not contest this assertion, <u>see</u> Opp'n, and, in any event, the Court agrees with Defendant, <u>see</u> <u>Young Men's Christian Ass'n of Plattsburgh</u>, 2018 WL 6267923, at *3 ("The dispute here must be resolved under New York Law, as the [insurance] policy was issued to a New York [resident] insuring activities and property in New York."). Therefore, the Court applies New York law to this case.

**B. Merits**

Defendant asks the Court to dismiss Plaintiff's claim for consequential damages, arguing that the Complaint's conclusory allegations fail to plausibly allege bad faith as is required for an award of such damages. Mem. at 4–7. The Court agrees.

Generally, a plaintiff can recover two types of damages in a breach of contract case: "general contract damages—i.e., damages that flow from the natural and probable consequences of the breach—[and] . . . 'special' or 'consequential' damages, which compensate for 'additional losses.'" <u>Sanderson v. First Liberty Ins. Corp.</u>, No. 16-CV-644, 2017 WL 5176371, at *6

(N.D.N.Y. Nov. 7, 2017) (citing E. Coast Res., LLC v. Town of Hempstead, 707 F. Supp. 2d 401, 410 (E.D.N.Y. 2010)); see also Maspeth Fed. Sav. & Loan Ass'n v. Fid. Info. Servs., LLC, 275 F. Supp. 3d 411, 418 (E.D.N.Y. 2017) ("Under New York law, . . . two types of damages may be pleaded in breach of contract cases: (1) general damages and (2) consequential damages."). To merit consequential damages from an alleged breach of an insurance contract, a plaintiff must show that: (1) "such damages were reasonably contemplated by both parties at the time of the contract's execution[;]" and (2) the damages "derive from [the] insurer's bad faith refusal to pay [the] insured's claim." Sikarevich Family L.P. v. Nationwide Mut. Ins. Co., 30 F. Supp. 3d 166, 173 (E.D.N.Y. 2014); see also Panasia Estates, Inc. v. Hudson Ins. Co., 886 N.E.2d 135, 137 (2008) ("[C]onsequential damages resulting from a breach of the covenant of good faith and fair dealing may be asserted in an insurance contract context, so long as the damages were within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting.") (internal quotation marks omitted).[2] Additionally, under Federal Rule of Civil Procedure 9(g), a plaintiff must plead consequential damages with particularity. See Ripka v. Safeco Ins., No. 14-CV-1442, 2015 WL 3397961, at *5 (N.D.N.Y. May 26, 2015). The Court now addresses, in turn: (1) foreseeability; (2) bad faith; and (3) particularity.

   1. *Foreseeability*

Generally, "[w]hether the injuries that gave rise to Plaintiff's claims for consequential damages were reasonably foreseeable and contemplated by the parties . . . is a factual issue and

---

[2] "This bad-faith requirement stems from a slightly confusing feature of New York contract law, which 'recognizes as implicit in every contract a covenant of good faith and fair dealing in the course of contract performance.'" Bryant v. Gen. Cas. Co. of Wisconsin, No. 18-CV-562, 2019 WL 367292, at *3 (N.D.N.Y. Jan. 30, 2019) (quoting Payday Advance Plus, Inc. v. Findwhat.com, Inc., 478 F. Supp. 2d 496, 503 (S.D.N.Y. 2007) (citation and internal quotation marks omitted).

6

thus reserved for the merits stage of litigation." Roman Catholic Diocese of Rockville Ctr. v. Gen. Reinsurance Corp., No. 16-CV-2063, 2016 WL 5793996, at *5 (S.D.N.Y. Sept. 23, 2016) (internal quotation marks omitted); see also Matkal LLC v. VG Rush Corp., No. 18-CV-2833, 2019 WL 1748601, at *8 (E.D.N.Y. Apr. 18, 2019) ("[A] determination of whether [consequential] damages were, in fact, for[e]seeable should not be decided on a motion to dismiss and must await a fully developed record.") (internal citations and quotation marks omitted; alterations in original). Despite this general rule, the Court is skeptical that Plaintiff's sole and conclusory allegation as to foreseeability—"wrongful conduct by the insurer could cause additional monetary loss [and] was reasonably foreseeable and contemplated by the parties at the time of contracting," Compl. ¶ 34—satisfies the Twiqbal standard. See Ripka, 2015 WL 3397961, at *6 (dismissing claim for consequential damages because the plaintiff "ha[d] not pleaded specific facts capable of showing that consequential damages, beyond the limits of the Homeowner's Policy, were reasonably contemplated by the parties."). However, even assuming Plaintiff has adequately pled the foreseeability element, her claim still fails because she has not plausibly pled bad faith, nor pled her claim for consequential damages with particularity.

   2. Bad Faith

"To establish an insurer's bad faith, the insured must demonstrate that 'no reasonable carrier would, under the given facts' deny coverage." Sunrise One, LLC v. Harleysville Ins. Co. of New York, 293 F. Supp. 3d 317, 328 (E.D.N.Y. 2018) (quoting Sukup v. State of New York, 227 N.E.2d 842, 844 (1967)). A "[m]ere difference of opinion between an insurer and an insured over the availability of coverage" is not enough. Jane St. Holding, LLC v. Aspen Am. Ins. Co., No. 13-CV-2291, 2014 WL 28600, at *10 (S.D.N.Y. Jan. 2, 2014), aff'd, 581 F. App'x 49 (2d Cir. 2014) (citing Sukup, 227 N.E.2d at 844). "Although courts in this Circuit acknowledge that

7

an insured can theoretically recover consequential damages from an insurer in a breach of contract action, they 'have generally found that the plaintiff was unable to meet the high standard to prevail on such a claim.'" Sunrise One, 293 F. Supp. 3d at 328 (quoting Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co., 238 F. Supp. 3d 314, 329 (N.D.N.Y. 2017)).

Here, Plaintiff has failed to adequately plead bad faith. Most of the allegations in the Complaint suggest a run-of-the-mill breach of contract, rather than the bad faith necessary to state a claim for consequential damages. See, e.g., Compl. ¶¶ 17 ("Although requested to do so, Defendant failed, refused, and continues to fail and refuse to pay Plaintiff . . . ."); 19 ("Defendant's failure to pay . . . is a breach of the insurance contract"); 32 ("Defendant's failure and refusal . . . to pay . . . constitutes a breach of Defendant's contract with Plaintiff[]."). "Those facts, accepted as true, plausibly amount to [Defendant's] alleged non-performance of its obligations under the policy[,] [but] [t]hey do not . . . amount to additional, bad faith behavior that would warrant compensation beyond the policy's limits." Bryant, 2019 WL 367292, at *4. Beyond these general breach allegations, the Complaint does contain several other statements that might suggest bad faith on the part of Defendant. For example, Plaintiff alleges that Defendant "did not adequately investigate the entire scope of damages," Compl. ¶ 21, did not correctly value the damage, id., "disregarded [Plaintiff's] information" in favor of the "incorrect and flawed opinions of its adjusters and advisers," id. ¶ 23, and "did not attempt to settle [Plaintiff's] claim in a fair manner." id. ¶ 28. However, these bare bones allegations are wholly conclusory and cannot satisfy Plaintiff's burden at this stage. See Bryant, 2019 WL 367292, at *4 (dismissing claim for consequential damages because the allegations of bad faith in the complaint were circular and conclusory); see also Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action . . . do not suffice.").

8

In an attempt to rescue her claim, Plaintiff argues in her Opposition that she "suffered severe, incapacitating and life-threatening illnesses immediately after" the pipe burst and damaged her property. Opp'n at 3 (referencing Compl. ¶ 9). And she argues that "Defendant . . . took advantage of Plaintiff's condition" following the burst pipe "by making unreasonable and increasingly burdensome information demands" of Plaintiff. Id. However, there is nothing in the Complaint about "unreasonable" or "increasingly burdensome" demands for information. See Compl. Nor does the Complaint allege that Plaintiff's "illnesses" were caused by the burst pipe,[3] or that Defendant even knew that Plaintiff was ill. See id. Without such knowledge, Defendant cannot have "t[aken] advantage" of Plaintiff's illnesses, as Plaintiff suggests. See Opp'n at 3. Thus, these arguments do not alter the Court's determination that Plaintiff has failed to adequately plead bad faith.

Further, another court in this district recently considered a nearly identical claim for consequential damages and held that it was inadequately pled. See Bryant, 2019 WL 367292, at *4. As Defendant points out, the amended complaint in Bryant "contained much of the same language as [the Complaint in] the case at bar,"[4] Mem. at 6, a fact that Plaintiff does not dispute, see Opp'n at 7; compare, e.g., Compl. ¶ 34 ("The loss incurred by Plaintiff was a direct and foreseeable consequence of Defendant's above described wrongful conduct in that such wrongful conduct by the insurer could cause additional monetary loss was reasonably foreseeable and contemplated by the parties at the time of contracting under the subject Policy.") with Bryant,

---

[3] Defendant also points out that, since Plaintiff became ill "immediately" after the pipe burst, Compl. ¶ 9, Defendant's alleged delay in making Plaintiff whole could not reasonably have caused those illnesses, Reply at 2.

[4] Defendant notes that counsel for Plaintiff in this matter served as counsel for the plaintiff in Bryant as well. Mem. at 6 n.1.

9

No. 18-CV-562, Dkt. No. 14 ("Bryant Amended Complaint") ¶ 30 ("The loss incurred by Plaintiff was a direct and foreseeable consequence of Defendant's above described wrongful conduct in that such wrongful conduct by the insurer could cause additional monetary loss was reasonably foreseeable and contemplated by the parties at the time of contracting under the subject Policy."). Presented with these allegations, the Bryant court dismissed the claim for consequential damages with the following explanation:

> [T]he . . . amended complaint does not plausibly allege facts sufficient to sustain a claim of bad faith . . . . [Most of the] facts alleged amount, at best, to an accusation that defendant did not satisfy the insurance claim in the amount, or on the precise timeline, that plaintiff believed to be appropriate under the circumstances. Id. ¶¶ 17–21, 26. . . . Those facts, accepted as true, . . . do not . . . amount to additional, bad faith behavior that would warrant compensation beyond the policy's limits.

Bryant, 2019 WL 367292, at *4. In the face of this analysis, Plaintiff argues that "each case is different" and that Bryant "is not automatically dispositive of the outcome on this motion." Opp'n at 7. Plaintiff is no doubt correct, but her argument is unpersuasive where she has not explained the material ways in which this case differs from Bryant, nor why this case should be resolved differently when the allegations here are virtually identical to those in Bryant. Without this explanation, the Court agrees with the analysis in Bryant and, for similar reasons, dismisses Plaintiff's claim for consequential damages.

### 3. Particularity

Additionally, and even assuming that Plaintiff's claim for consequential damages were otherwise plausibly pled, the claim would still not survive because it is not pled with sufficient particularity. "Claims for special damages must be fully and accurately stated, with sufficient particularity to identify actual losses . . . , [and] a general allegation of a dollar amount . . . will not suffice." Ripka, 2015 WL 3397961, at *5 (internal quotation marks omitted); see also Schonfeld v. Hilliard, 218 F.3d 164, 175 (2d Cir. 2000) (equating "special" and "consequential"

10

damages in breach of contract actions); Fed. R. Civ. P. 9(g) ("If an item of special damage is claimed, it must be specifically stated."). Here, Plaintiff has failed to even allege a dollar amount. See Compl. at 6 ("Wherefore, Plaintiff . . . prays that this Court enter judgment in her favor . . . in an amount more than $75,000, consequential damages, plus prejudgment interest and costs."). Indeed, the Complaint is even unclear for what injury consequential damages will compensate Plaintiff. See, e.g., Compl. ¶ 34 (stating that the "loss incurred by Plaintiff was a direct and foreseeable consequence of Defendant's . . . wrongful conduct . . ." but failing to specify what loss); see also Ripka, 2015 WL 3397961, at *5 (dismissing claim for consequential damages, in part, because damages were not "fully and accurately stated, with sufficient particularity to identify actual losses").

Plaintiff tries to salvage the Complaint's murky description of her losses but, ultimately, fails to clarify. See, e.g., Opp'n at 6 ("There should be no doubt that the facts alleged in the Complaint create an inference that Plaintiff sustained not only physical damages from the covered cause of loss, but damages from Defendant's alleged breach of contract and additional incurred costs due to delay in investigation and payment of the claim."). While she asserts that "the Property has worsened since the loss," thus causing her to "incur[] additional costs," id. at 7, nowhere does she explain how the Property worsened, what the additional costs covered, or how much they were. Without particularized answers to these kinds of questions, as required by Rule 9, the Court must dismiss Plaintiff's claim on this basis as well. See Ebrahimian v. Nationwide Mut. Fire Ins. Co., 960 F. Supp. 2d 405, 418 (E.D.N.Y. 2013) (concluding that a party's "general plea for consequential and special damages" was insufficient as a matter of law where plaintiff specified nothing but a dollar amount); Nat'l R.R. Passenger Corp. v. Arch Specialty Ins. Co., 124 F. Supp. 3d 264, 281 (S.D.N.Y. 2015) (noting that "[c]onsequential damages are special

damages that must be 'specifically stated'" under Rule 9, and finding that Amtrak's request for consequential damages because it was "divert[ed] . . . from its restoration efforts" were too vague and conclusory to satisfy the "specifically stated" standard).

**C. Leave to Amend**

If the Court decides to grant Defendant's motion, Plaintiff requests that the Court also grant her leave to amend her Complaint to replead her claim for consequential damages. Opp'n at 8. A "court 'should freely give leave [to amend] when justice so requires.'" Great Lakes Reinsurance (UK) SE v. Herzig, 413 F. Supp. 3d 177, 182 (S.D.N.Y. 2019) (quoting Fed. R. Civ. P. 15). "[T]he 'rule' in the Second Circuit is that a party is allowed 'to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith.'" Apotex Corp. v. Hospira Healthcare India Private Ltd., No. 18-CV-4903, 2019 WL 3066328, at *9 (S.D.N.Y. July 12, 2019) (quoting Pasternack v. Shrader, 863 F.3d 162, 174 (2d Cir. 2017)); see also Rachman Bag Co. v. Liberty Mut. Ins. Co., 46 F.3d 230, 234 (2d Cir. 1995) ("The Supreme Court has emphasized that amendment should normally be permitted, and has stated that refusal to grant leave without justification is inconsistent with the spirit of the Federal Rules." (internal quotation marks omitted)). Here, Defendant does not appear to object to Plaintiff's request. See Reply. Therefore, the Court grants Plaintiff's request and dismisses with leave to amend the claim for consequential damages. See Woodworth v. Erie Ins. Co., No. 05-CV-6344, 2009 WL 1652258, at *6 (W.D.N.Y. June 12, 2009) (granting in part leave to amend complaint to assert demand for consequential damages).

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion to Dismiss Plaintiff's claim for consequential damages is **GRANTED**; and it is further

**ORDERED**, that Plaintiff may file an amended complaint within **thirty days** of the filing date of this Memorandum-Decision and Order; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:	March 30, 2020
	Albany, New York

Lawrence E. Kahn
Senior U.S. District Judge